UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LAKRISHIA DUMAS                                              CIVIL ACTION NO.

VERSUS                                                       16-262-BAJ-EWD

O'REILLY AUTOMOTIVE STORES, INC.

## RULING AND ORDER ON DEFENDANT'S MOTION TO COMPEL COMPLETE RESPONSES TO DISCOVERY AND PLAINTIFF'S MOTION TO COMPEL

Before the court is a Motion to Compel Complete Responses to Discovery (the "Defendant's MTC")[1] filed by defendant, O'Reilly Automotive Stores, Inc. ("O'Reilly") and Plaintiff's Motion to Compel ("Plaintiff's MTC").[2] An opposition memorandum was filed with regard to each motion.[3] On March 9, 2017 counsel for both parties participated in a telephone status conference with the undersigned to discuss the motions.[4] Following that conference, the parties were instructed to meet and confer regarding the motions in an effort to resolve the issues raised. Each party filed the supplemental certification as ordered.[5] While many of the issues were resolved by agreement according to the supplemental certifications, the remaining issues will be addressed by this ruling. For the reasons set forth herein, Defendant's MTC is **DENIED**. Plaintiff's MTC is **GRANTED in part**.

I. Background

On April 22, 2016, Plaintiff, LaKrishia Dumas ("Plaintiff") filed a Complaint against Defendant alleging claims under Title VII of the Civil Rights Act of 1964, as amended, and the

---

[1] R. Doc. 9.

[2] R. Doc. 11.

[3] R. Docs. 12 and 17.

[4] R. Doc. 14.

[5] R. Docs. 15 and 16.

1

Louisiana Employment Discrimination Law. Specifically, Plaintiff claims O'Reilly "discriminated against her on the basis of her gender and retaliated against her by subjecting her to a hostile work environment, sexual harassment, and retaliation, and ultimately terminating Plaintiff's employment."[6] Plaintiff requests that she be awarded "all available relief including, but not limited to, a declaratory judgment that the acts and practices of the Defendant complained of herein are in violations [sic] of the laws of Louisiana, injunctive relief, an award of lost wages, including lost fringe benefits, which resulted from the unlawful retaliation complained of herein, reinstatement or front pay in lieu thereof, compensatory and punitive damages, attorneys fees, expenses, and costs, and all other and further relief as to this Court appears necessary and proper."[7]

**A. O'Reilly's Motion to Compel Complete Responses to Discovery**

On February 15, 2017, O'Reilly filed its Motion to Compel Complete Responses to Discovery.[8] In the Motion to Compel, O'Reilly asserts that it served its First Set of Interrogatories and Requests for Production (the "Discovery Requests") on Plaintiff on September 15, 2016 and that Plaintiff responded to the Discovery Requests on November 23, 2016. On November 28, 2016, counsel for O'Reilly sent a letter to Plaintiff's counsel detailing deficiencies in the responses provided and requesting a telephone conference. On December 1, 2016, counsel had a telephone conference and, according to O'Reilly, Plaintiff's counsel agreed to supplement certain responses, which Plaintiff's counsel failed to do.

While there were several requests originally identified by O'Reilly as requiring a supplemental response, following the conference with the undersigned, counsel for O'Reilly and Plaintiff conferred again and were able to resolve all the disputes with the exception of whether

---

[6] R. Doc. 1, ¶1.
[7] R. Doc. 1, ¶27.
[8] R. Doc. 9.

2

Plaintiff should be required to provide information other than her income tax returns to establish the source of any funds Plaintiff received from January 2015 to present.[9]

### B. Plaintiff's Motion to Compel

On March 1, 2017, Plaintiff filed her Motion to Compel.[10] In Plaintiff's Motion to Compel, Plaintiff asserts that she is entitled to information about complaints of gender discrimination, harassment, or retaliation against O'Reilly in the region/divisions where Plaintiff's former store is located between August 2011 and present. O'Reilly responded only that it did not receive any complaints with respect to Reginald Beachum (Plaintiff's alleged harasser). Plaintiff offered to limit the scope of her requests to only those complaints investigated by Mr. Farlon Williams and complaints in Defendant's store locations in Louisiana. O'Reilly's counsel rejected this offer. O'Reilly also refused to provide communications pertaining to an investigation of Plaintiff's internal complaints on the basis of the work product doctrine. Counsel were also unable to resolve the issues related to O'Reilly's objection to production of an email from its Regional Loss Prevention Auditor on the basis of the work product doctrine.

## II. Law and Analysis

### A. Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

---

[9] R. Doc. 16.
[10] R. Doc. 11.

expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

A determination of relevancy is tied to applicable substantive law and then weighed against the six proportionality factors. Any information sought that is not relevant to a party's claim or defense is not discoverable, regardless of proportionality. The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Motions to compel discovery responses are governed by Rule 37(a) of the Federal Rules of Civil Procedure. "Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production or answers against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34 or to answer interrogatories under Federal Rule of Civil Procedure 33." *Gondola v. USMD PPM, LLC*, 2016 WL 3031852, at *2 (N.D. Tex. May 27, 2016) (citing Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv)).

### B. Sufficiency of Plaintiff's Discovery Responses

Per Defendant's Motion to Compel, as supplemented and modified by O'Reilly's Supplemental Rule 37(a)(1) Certificate, O'Reilly seeks an order from this court compelling a more complete response to each of the following requests:

> **INTERROGATORY NO. 6**
> While you were employed by O'Reilly, please identify Your other sources of Income in addition or any Income received from O'Reilly, including but not limited to the identity of any of Your employers since that date and your Income or earnings paid or received from any other such employer.

**RESPONSE TO INTERROGATORY NO. 6**
Plaintiff does not recall being employed since her termination from O'Reilly, but will supplement this response to the extent there is any additional responsive information.

**INTERROGATORY NO. 7:**
Please identify all of Your sources of Income subsequent to the date on which Defendant terminated your employment, including but not limited to the identity of any of Your employers since that date and your Income or earnings paid or received from any other such employer.

**RESPONSE TO INTERROGATORY NO. 7:**
Plaintiff does not recall being employed since her termination from O'Reilly, but will supplement this response to the extent there is any additional responsive information.

**REQUEST FOR PRODUCTION NO. 3:**
Please produce any documents that describe or evidence Your sources of Income while You were employed by Defendant. [sic] after Defendant terminated Your employment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**
Plaintiff does not recall being employed since her termination from O'Reilly, but will supplement this response to the extent there is any additional responsive information. In addition, please see the documents produced herewith Bates number Dumas 1 through 54.

**REQUEST FOR PRODUCTION NO. 4:**
Please produce any documents that describe or evidence Your sources of Income after Defendant terminated Your employment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**
Plaintiff does not recall being employed since her termination from O'Reilly, but will supplement this response to the extent there is any additional responsive information. In addition, please see the documents produced herewith Bates number Dumas 1 through 54.

**REQUEST FOR PRODUCTION NO. 5:**
Please produce any documents that describe or evidence Your Benefits after Defendant terminated Your employment.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**
Plaintiff does not recall being employed since her termination from O'Reilly, but will supplement this response to the extent there is any

> additional responsive information. In addition, please see the documents produced herewith Bates number Dumas 1 through 54.
>
> **REQUEST FOR PRODUCTION NO. 6:**
> Please produce any documents that describe or evidence any unemployment compensation benefits or other similar benefits that You received after the date on which Defendant terminated Your employment.
>
> **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**
> Plaintiff does not recall being employed since her termination from O'Reilly, but will supplement this response to the extent there is any additional responsive information. In addition, please see the documents produced herewith Bates number Dumas 1 through 54.

O'Reilly argues that these requests are relevant because Plaintiff seeks to recover lost wages in this case. The Supplemental Certificate submitted by O'Reilly indicates that Plaintiff's counsel has taken the position that Plaintiff's tax returns will contain sufficient information to determine this information. In rejecting Plaintiff's tax returns as resolution of this issue, O'Reilly states that it is "entitled to discovery regarding any sources of any funds received by Plaintiff during this time period, whether or not reflected in her tax returns."[11] In its Opposition memorandum, Plaintiff further states that while she has received financial support from her father, she has not earned any income as that term is defined in O'Reilly's discovery requests[12] until she obtained employment on February 28, 2017 with Hope Therapy Services in Baton Rouge. Plaintiff states she has supplemented her discovery responses to reflect this information.[13]

---

[11] R. Doc. 16, ¶ 3.

[12] The discovery requests define "income" to mean "any money or other consideration paid to or received by You, whether directly or indirectly, in connection with: (a) any consultation, employment, labor, services or work of any kind or type that you furnish, perform, provide or render; (b) any business, capital, extension of credit, intellectual property, investment, loan, property or right involving any manner; and/or, (c) any benefit involving any local, federal, state or other governmental agency for aid, disability, unemployment, welfare or other similar governmental benefits." R. Doc. 9-4, p. 4.

[13] R. Doc. 12, pp. 4-5.

Plaintiff is seeking lost wages in this matter, including loss of fringe benefits.[14] O'Reilly has raised as its Twenty-Second Defense that "Plaintiff's recovery (if any) must be reduced by any earnings, income and benefits that Plaintiff received subsequent to the cessation of her employment with O'Reilly."[15] Accordingly, information about earnings and benefits is relevant to the claims and defenses asserted in this matter. Based on the information provided by the parties, however, Plaintiff has provided sufficient responses to O'Reilly's requests. Specifically, Plaintiff has submitted supplemental interrogatory responses indicating that she is now employed, the name and address of her current employer, and that she will supplement with earnings information when she receives it.[16] This is in addition to Plaintiff's agreement to provide income tax returns from 2010 to present.[17]

Accordingly, Defendant's MTC is **DENIED**. Because Defendant's MTC is denied, Defendant's request for attorney's fees and costs associated with filing the motion is also **DENIED**.

### C. Sufficiency of O'Reilly's Discovery Responses

#### 1. Plaintiff's Requests for Other Complaints of Discrimination

Per Plaintiff's Motion to Compel, as supplemented and modified by Plaintiff's Supplemental Rule 37(a)(1) Certification, Plaintiff seeks an order from the court compelling more complete responses to the following interrogatory and request for production of documents:

> **INTERROGATORY NO. 5**
> Please identify all persons between August 2011 and the present who have made complaints of gender discrimination, harassment, or retaliation against Defendant in the region/division in which

---

[14] R. Doc. 1, ¶27.

[15] R. Doc. 5, p. 5.

[16] R. Doc. 12-2.

[17] R. Doc. 15, ¶ 5.

Plaintiff's former store is located. For each complaint, set forth the allegations of the complaint in detail; describe any action taken by Defendant in response to the complaint. For each complaining employee, identify their job title, the date the complaint was made, and who received the complaint.

**RESPONSE TO INTERROGATORY NO. 5**
O'Reilly objects to Interrogatory No. 5 on the grounds that it is vague and ambiguous with respect to the meaning of "complaint" as well as the meaning of "region/division"; it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence; it is overbroad to the extent it constitutes multiple, distinct requests; it seeks confidential information protected by state and/or federal law; and the requested discovery is not proportional to the needs of the case, considering the amount in controversy and the importance of the requested discovery in resolving the issues and the burden thereof outweighs any likely benefit. The Region in which Plaintiff worked contains approximately 87 stores, and the Division in which Plaintiff worked contains approximately 508 stores. Subject to and without waiving the foregoing objections, O'Reilly responds that it did not receive any complaints with respect to the conduct of Reginald Beachum at any time prior to its receipt of Plaintiff's complaint following her termination in April 2014.

**REQUEST FOR PRODUCTION NO. 8:**
All documents constituting any complaints, concerns, or other comments expressed to Defendant concerning gender discrimination, harassment, and retaliation between August 2011 and the present; and all documents concerning any responses thereto.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**
In addition to the General Objections, O'Reilly objects to this request on the grounds that it: is vague and ambiguous with respect to the meaning of "complaint" as well as to what documents "concern" such complaints or responses thereto; it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence; is not probative of or relevant to any fact or issue in dispute; seeks confidential information protected by state and/or federal law; and the requested discovery is not proportional to the needs of the case, considering the amount in controversy and the importance of the requested discovery in resolving the issues and the burden thereof outweighs any likely benefit. Notably, the gargantuan, enormously costly and plainly unreasonable and labor intensive undertaking that would be involved with responding to

> Plaintiff's Request is demonstrated by the simple fact that O'Reilly operates more than 4,500 stores in over 40 states.
>
> Subject to and without waiver of the foregoing objections, O'Reilly responds that it did not receive any complaints with respect to Reginald Beachum at any time before or during Plaintiff's employment with O'Reilly.

In the Supplemental Certification, Plaintiff indicates that she is willing to limit these request to complaints investigated by Mr. Farlon Williams and complaints in Defendant's store locations in Louisiana.[18] O'Reilly continues to object to the requests, even as limited, as overly broad and unduly burdensome. O'Reilly states that it has over 100 stores just in Louisiana with multiple levels of managers and employees and reiterates its assertion from its Opposition Memorandum that unrelated complaints investigated by Farlon Williams have no relevance to this litigation.[19]

In *E.E.O.C. v. Packard Electric Div., General Motors Corp.*, 569 F.2d 315, 318 (5th Cir. 1978), the Fifth Circuit discussed the fact that when an individual complaint of discrimination is at issue it would be "most natural" to focus on that employing unit or work unit from which came the employment decision the complainant asserts was discriminatory. Here, Plaintiff only worked at O'Reilly store number 442 for a period of less than three months (January 15, 2015 to April 3, 2015).[20] While Plaintiff's request for complaints in any store throughout the region, division, or State of Louisiana, is not proportional to the needs of this case, O'Reilly's limitation to only complaints about Reginald Beachum is too limited. Information about complaints of gender discrimination, harassment and/or retaliation at O'Reilly store number 442 (where Plaintiff was employed) for the time period from January 15, 2014 through April 3, 2016 (a year before

---

[18] R. Doc. 15, ¶3.

[19] R. Doc. 16, ¶8.

[20] R. Doc. 11-4.

Plaintiff's employment began and a year after her employment was terminated) may provide information relevant to Plaintiff's claims of individual discrimination, harassment and retaliation, but is narrowly tailored to meet the proportionality requirements of Rule 26. [21]

Accordingly, Plaintiff's MTC with regard to Interrogatory No. 5 and Request for Production No. 8 is **GRANTED in Part**. Within fourteen (14) days of this Ruling and Order, O'Reilly shall provide supplemental responses to Interrogatory No. 5 and Request for Production No. 8 for any complaints of gender discrimination, harassment and/or retaliation at O'Reilly store number 442 from January 15, 2014 through April 3, 2016.

### 2. Plaintiff's Requests for Documents Related to Internal Investigation

O'Reilly submitted a privilege log in connection with its discovery responses. The only document listed is described as an email, dated June 19, 2015, regarding investigation of Plaintiff's wrongful termination complaint from Robert Harwood, Regional Loss Prevention Auditor, to Farlon Williams.[22] O'Reilly withheld the document under Fed. R. Civ. P. 26(a)(3)(A) as having been prepared in anticipation of litigation.

Pursuant to Fed. R. Civ. P. 26(b)(3)(A), "[o]rdinarily, a party may not discover documents and tangible things that are *prepared in anticipation of litigation* or for trial by or for another party *or its representative* (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent.)" (emphasis added). However, such materials may be discovered if "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial

---

[21] In light of uncontroverted evidence that Farlon Williams was not involved in any alleged act of discrimination against Defendant (*see*, R. Docs. 11-2, pp. 13-14 and 11-4), information regarding other complaints Farlon Williams investigated is not relevant to Plaintiff's claims unless those complaints otherwise fall within the scope of the limitations on Interrogatory No. 5 and Request for Production No. 8 as established in this Ruling and Order.
[22] R. Doc. 11-5.

equivalent by other means." *Id*. "The party who is seeking the protection of the work-product doctrine has the burden of proving that the documents were prepared in anticipation of litigation." *Colony Ins. Co. v. NJC Enterprises, LLC*, 2013 WL 1335737, at *2 (M.D. La. April 1, 2013).

"It is not dispositive that some documents were not prepared by attorneys. Rule 26(b)(3) protects from discovery documents prepared by a party's agent, as long as they are prepared in anticipation of litigation." *Naquin v. UNOCAL Corp.*, 2002 WL 1837838, at *7 (E.D. La. Aug. 12, 2002). *See also*, *Southern Scrap Metal Co. v. Fleming*, 2003 WL 21474516, at * 6 (E.D. La. June 18, 2003) ("The [work product] doctrine protects not only materials prepared by a party, but also materials prepared by a co-party, or representative of a party, including attorneys, consultants, agents, or investigators."); *Colony Ins. Co. v. NJC Enterprises, LLC*, 2013 WL 1335737, at *2 (M.D. La. April 1, 2013). "In general, investigative reports prepared by agents of the party or the party's attorney are protected by the work product doctrine." *Kansas City Southern Ry. Co. v. Nichols Const. Co., LLC*, 2007 WL 2461014, at *3 (E.D. La. Aug. 27, 2007).

"The work-product doctrine does not protect materials assembled in the ordinary course of business, pursuant to regulatory requirements, or for other non-litigation purposes." *Colony Ins. Co. v. NJC Enterprises, LLC*, 2013 WL 1335737, at *2 (M.D. La. April 1, 2013). "To determine whether a document is protected from disclosure by the work-product doctrine, the threshold question is whether the document was prepared in anticipation of litigation." *In re Vioxx Products Liability Litigation*, 2007 WL 854251, at *3 (E.D. La. March 6, 2007). In the Fifth Circuit, "the privilege can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" *In re Kaiser Aluminum and Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) citing *U.S. v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982). "To determine the primary motivation for the creation of a document,

courts look to a variety of factors, including, 'the retention of counsel and his involvement in the generation of the document and whether it was routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance.'" *Colony Ins. Co. v. NJC Enterprises, LLC*, 2013 WL 1335737, at *2 (M.D. La. April 1, 2013) citing *Elec. Data Sys. Corp. v. Steingraber*, 2003 WL 21653414 at *5 (E.D. Tex. July 9, 2003). "If the document would have been created regardless of whether litigation was expect to ensue, the document is deemed to have been created in the ordinary course of business and not in anticipation of litigation." *Elec. Data Sys. Corp. v. Steingraber*, 2003 WL 21653414 at *5 (E.D. Tex. July 9, 2003). "[T]he existence of litigation is not a prerequisite; materials qualify for work-product protection if the 'primary purpose' for their creation was related to potential litigation." *In re Vioxx Products Liability Litigation*, 2007 WL 854251, at *3 (E.D. La. March 6, 2007) citing *In re Kaiser Aluminum and Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) and *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981) ("[L]itigation need not necessarily be imminent…as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.").

O'Reilly has not met its burden of showing the email at issue was prepared in anticipation of litigation. In support of its contention, O'Reilly simply states that the fact the document was prepared primarily in anticipation of litigation is "evident by the fact that it was created well after Plaintiff's termination, and after the completion of O'Reilly's investigation thereof."[23] O'Reilly has not addressed any of the factors relevant to a determination of whether the document was prepared in anticipation of litigation, such as whether counsel had been retained, whether counsel was involved in the creation of the document, or whether it was routine practice for Mr. Harwood

---

[23] R. Doc. 17, p. 10.

in his role as Regional Loss Prevention Auditor to prepare such a document in connection with an investigation. Notably, O'Reilly also did not submit any affidavit testimony regarding these issues.

Accordingly, Plaintiff's MTC with regard to the production of the June 19, 2015 email, regarding investigation of Plaintiff's wrongful termination complaint from Robert Harwood, Regional Loss Prevention Auditor, to Farlon Williams, is **GRANTED**. Within fourteen (14) days of this Ruling and Order, O'Reilly shall provide the email to Plaintiff. Because Plaintiff's MTC is only granted in part, an award of costs is not appropriate.

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel is **DENIED**.[24]

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel[25] is **GRANTED in part**. Within fourteen (14) days of the date of this Ruling and Order, defendant, O'Reilly Automotive Stores, Inc., shall provide to Plaintiff supplemental responses to Interrogatory No. 5 and Request for Production No. 8 for any complaints of gender discrimination, harassment and/or retaliation at O'Reilly store number 442 from January 15, 2014 through April 3, 2016; and the June 19, 2015 email, regarding investigation of Plaintiff's wrongful termination complaint from Robert Harwood, Regional Loss Prevention Auditor, to Farlon Williams.

Both Plaintiff's and Defendant's request for fees associated with the Motions to Compel are **DENIED**.

Signed in Baton Rouge, Louisiana, on June 13, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[24] R. Doc. 9.
[25] R. Doc. 11.